

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

**ENTERED**
**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed June 19, 2008                      **United States Bankruptcy Judge**

---

**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re:<br><br>PETER ROSETTI,<br><br>        Debtor.<br>_____<br><br>PETER ROSETTI,<br><br>        Plaintiff,<br>v.<br><br>CHASE HOME FINANCE LLC,<br><br>        Defendant.<br>_____ | § § § § § § § § § § § § § § § § § § | Case No.<br>06-43810-DML-13<br>Chapter 13<br><br><br><br><br><br>Adversary No.<br>07-04063-DML |

**MEMORANDUM OPINION**

Before the court is "*Defendant's Motion for Summary Judgment Combined with Brief in Support*" (the "Motion") filed by Chase Home Finance LLC, successor by merger to Chase Manhattan Mortgage Corporation ("Chase"). By the Motion, Chase asserts that it is entitled to judgment in its favor to the effect that none of the relief sought in the captioned adversary proceeding can be granted.

The court heard argument on the Motion on April 15, 2008. Both parties have provided the court with authorities and summary judgment evidence (identified as appropriate below) in

Memorandum Opinion 1
G:\ORD-Server\activePDF\Sign\Temp\74240_469212.doc

support of their respective positions.[1] The court exercises core jurisdiction with respect to the Motion pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(O). This memorandum opinion embodies the court's findings of fact and conclusions of law as provided by FED. R. BANKR. P. 7052.

## I. BACKGROUND

### A. Procedural History

On November 30, 2004, Peter Rosetti ("Mr. Rosetti" or "Debtor") and DeAnne Rosetti (together with Debtor, the "Rosettis") filed a joint petition for relief under Chapter 7 of the Bankruptcy Code (the "Code"),[2] case number 04-91429-RFN (the "First Bankruptcy Case"). The Rosettis received a discharge on March 2, 2005. In their original schedules, the Rosettis did not list any causes of action against Chase. On April 26, 2005, the Rosettis filed a motion to reopen the First Bankruptcy Case due to a problem with an escrow account related to the loan secured by their home which account is managed by Chase. The motion to reopen was granted by Hon. Russell F. Nelms.

The Rosettis then filed an adversary proceeding against Chase asserting breaches of contract and breaches of fiduciary duty by Chase related to its management of the escrow account. The Rosettis also amended their schedules to reflect their cause of action against Chase. Upon a Motion to Dismiss for Lack of Jurisdiction and a Motion for Summary Judgment urged by Chase, Judge Nelms determined that the right to pursue the breach of contract and breach of fiduciary duty claims vested in the Chapter 7 Trustee (the "Trustee") unless the Trustee

---

[1] By motion dated May 9, 2008, Chase asked leave to file an additional brief. Concluding that further briefing by the parties would not assist in resolving the Motion, the court denied Chase leave to file its additional brief.

[2] 11 U.S.C. §§ 101, *et seq*.

chose not to pursue them. Judge Nelms gave the Trustee a time within which to intervene in the pending adversary, of which the Trustee did not take advantage.

The Rosettis then filed a motion to convert their case to Chapter 13 on September 26, 2006, and Chase filed a motion to lift the automatic stay the following day. While both motions were pending, the Rosettis filed a motion to dismiss the First Bankruptcy Case which was granted on October 11, 2006—one day before the hearing on Chase's motion to lift the stay. Then, on November 4, 2006, Mr. Rosetti filed a second case (the captioned case) under Chapter 13 of the Bankruptcy Code (the "Second Bankruptcy Case")—23 days after obtaining the voluntary dismissal of the First Bankruptcy Case. In his schedules, Mr. Rosetti listed claims against Chase.

On May 8, 2007, Mr. Rosetti initiated this adversary proceeding in the Second Bankruptcy Case and Chase filed its "*Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, and Alternative Request for Abstention and Motion to Dismiss for Failure to State a Claim upon which Relief May Be Granted*" (the "12(b)(6) Motion"). Following briefing by the parties and oral argument, the 12(b)(6) Motion was granted in part and denied in part, leaving only Mr. Rosetti's breach of contract claim for consideration.[3]

B. **Substance of the Dispute**

Chase is the holder and owner of a note and deed of trust (the "Note" and "Deed of Trust") executed by the Rosettis in favor of Mortgage Portfolio Services, Inc. on November 20, 1998, in connection with their purchase of real property located at 7801 Park Run Road, Fort

---

[3] See Rosetti v. Chase Home Fin. LLC (*In re* Rosetti), No. 07-04063-DML, 2007 WL 2669265 (Bankr. N.D. Tex. Sept. 6, 2007) ("Rosetti I"). Chase also sought dismissal of the Second Bankruptcy Case under Code § 109(g), which relief the court denied. With respect to the 12(b)(6) Motion, the court determined that Chase did not have fiduciary responsibilities to Debtor and that Debtor was not entitled to punitive damages against Chase. The court noted (Rosetti I at *5, n.31) that the alleged misapplication of the escrow by Chase would be a breach of the parties' contract and would require requantification of the amount due Chase from Debtor. The court therefore declined to dismiss the adversary.

3

Worth, Texas 76137 (the "Property"). Pursuant to paragraph two of the Deed of Trust, the subject loan is an escrow loan whereby the Rosettis are to pay Chase monthly projected amounts for estimated property taxes and hazard insurance. Paragraph five of the Deed of Trust permits Chase to force-place hazard insurance on the property if the Rosettis do not maintain coverage, and requires that hazard insurance on the Property include a mortgagee clause which designates the mortgagee as the beneficiary.

   1.   *The Insurance Mix-up*

Sometime before November 20, 2003, the Rosettis decided to terminate their then-existing coverage and obtain a less-expensive hazard insurance policy which offered the same or better coverage. Their $1,449 policy was due to expire November 20, 2003, but the new $1,180 policy did not take effect until December 3, 2003. When Chase requested proof of coverage from November 20, 2003 through November 20, 2004, Mr. Rosetti claims to have replied on December 15, 2003. Chase has no record of this letter. Chase sent another request on January 20, 2004 along with a notice that coverage would be force-placed if Mr. Rosetti "failed to provide proof of insurance from November 20, 2003 to November 20, 2004."[4] Chase claims that it received no such proof and that, even if Chase did receive proof of the new policy, "it was deficient and of no legal effect" because it did not contain a mortgagee clause designating Chase as beneficiary.[5]

On March 5, 2004, Chase paid $4,250.48 for a force-placed hazard insurance policy on the Property covering the period of November 20, 2003 to November 20, 2004. On March 22, 2004, Chase notified Mr. Rosetti of the forced placement and that his monthly payments would rise beginning May 1, 2004 to cover the cost of the new insurance premium. Four days later, Mr.

---

[4] Motion ¶ 19.

[5] Id. ¶¶ 18, 20.

4

Rosetti sent Chase a letter stating, "I did not receive any prior letters requesting evidence of hazard insurance as stated in the Notice. I was unaware that you did not have my current hazard insurance information."[6] The letter requested that the force-placed policy be cancelled and that the premium not be assessed to Mr. Rosetti's escrow account. The proof of insurance enclosed with the letter properly listed Chase in the "Mortgagee or Other Interest" field,[7] and Mr. Rosetti stated that he would contact his insurance agent to "verify that the policy contains the appropriate [mortgagee clause]."[8] The letter, however, also acknowledged the 13-day gap in coverage from November 20, 2003 to December 3, 2003.[9]

Chase asserts that it obtained a partial refund of the force-placed insurance premium on April 14, 2004.[10] A refund of the entire premium was not possible due to the 13-day gap in coverage.[11] Chase's loan transaction history (the "Loan History")[12] therefore reflects a $4,099.35 credit to Mr. Rosetti's escrow account on April 14th, which is the appropriate 352-day refund based on the $4,250.48 annual premium.[13] Therefore, it is possible that the insurance mix-up was resolved within six weeks of the forced placement. However, an August 17, 2004 letter from Chase to Mr. Rosetti suggests that the April 14th credit may have been retroactively

---

[6] Letter from Peter N. Rosetti to Chase Manhattan Mortgage Corp. (Mar. 26, 2004).

[7] Enclosure with Id.

[8] Letter from Peter N. Rosetti to Chase Manhattan Mortgage Corp. (Mar. 26, 2004).

[9] Id.

[10] Motion ¶¶ 25-26.

[11] Id. ¶ 25.

[12] Chase Manhattan Mortgage Corp. transaction detail of Acct. #1512657693 printed 4/6/06.

[13] Id. ¶ 26; Loan History at posting dates 3/5/04 and 4/14/04 (mislabeling the 3/5/04 transaction as "Forced place Hazard Insurance Refund").

applied.[14] Regardless of whether the insurance mix-up itself was resolved within six weeks or twenty-four weeks, the Loan History suggests that billing issues continued into late September.

### 2. *The Rosettis' Loan History Before, During, and After the Insurance Mix-up*

The uncontroverted summary judgment evidence shows that the Rosettis had a habit of falling substantially behind on monthly mortgage payments and then catching up to current status.[15] Chase maintained a normal working relationship with the Rosettis despite this and waived some late fees but, for the most part, Chase billed and collected late fees (which provided a substantial return on the tardily-paid funds[16]).

The Loan History indicates that the Rosettis were "Paid to . . . Feb-04" on February 23, 2004. Chase force-placed hazard insurance on March 5, 2004 and mailed a notice of the forced-placement on March 22nd. Four days later, Mr. Rosetti faxed and mailed proof of insurance which included the contractually-required mortgagee clause. Although Chase admits that it received this letter and the proof of insurance,[17] Mr. Rosetti claims that Chase did not respond[18]

---

[14] Letter from Chase Manhattan Mortgage Corp. to Peter N. Rosetti (Aug. 17, 2004).

[15] Loan History.

[16] On 11/8/99, Chase collected $82.90 in late fees that it billed for two $965.74 amounts-due that were each two days past the late charge deadline, providing Chase with a gross realized APR of 783% (seven hundred eighty-three percent) on the tardily-paid funds (APR equivalent based upon a 365-day year). From 2/10/00 through 01/19/01, Chase waived collection of six billed late fees. Chase stopped waiving billed late fees for the Rosettis in the summer/fall of 2001. Chase collected $961.35 in late fees from 9/4/01 through 5/17/04 on amounts due that averaged either $1,443.92 or $1,492.93 (depending on whether the proper amounts due were $1,562.68 or $2,126.25 in March and April of 2004). These amounts due were paid an average of 22.47826 days past the late fee deadline dates, providing Chase with a gross realized APR of approximately 45.46% to 47.00% on those tardily-paid funds. (The court is aware that the Rosettis' payments were due on the first of every month. However, for the limited purpose of the above calculations, the court considers the late fee posting dates reflected in the Loan History to be the true "pay by or else" dates. This is because Chase's business practice was to not charge late fees until the second half of the month. Chase would have therefore essentially considered the Rosettis' payments to have been "on-time" if received before those dates.) That Chase realized a return by reason of late fees does not, of course, mean it was benefitted by the Rosettis sporadic performance – indeed, the late fees may have done no more than compensate for the administrative headaches Chase endured. However, the charge and payment of the late fees supports the court's conclusion that the Rosettis did perform under the Note at a level commensurate with Chase's expectations and requirements.

[17] Compare Motion ¶ 22 with ¶ 18.

6

and that Chase mailed a statement on March 29th which states $2,126.25 as the new monthly payment.[19] This amount was calculated to cover the cost of the full 365-day force-placed premium.

Mr. Rosetti claims he contacted a Chase representative named Nathaniel Dixon on April 14, 2004.[20] The representative allegedly gave oral assurances (1) that Chase received the faxed and mailed insurance documentation, (2) that the force-placed premium would be credited to Mr. Rosetti's account, and (3) that Mr. Rosetti should continue making monthly payments in the previously-billed lower amount rather than the newly-billed higher amount.[21]

Mr. Rosetti made monthly payments at the previously-billed lower amounts on or about April 19th and May 9th of 2004, both of which are properly reflected in the Loan History.[22] Mr. Rosetti claims that he then paid $1,612.03 (the lower previously-billed amount plus a late fee) on or about June 15, 2004, but that Chase placed $1,097.81 of that amount into "Unapplied Funds" rather than crediting the amount to principal, interest, or escrow.[23]

The Loan History reflects the $1,097.81 credit to "Unapplied Funds," but does not show the $1,612.03 payment that Mr. Rosetti claims in his affidavit.[24] Rather, the payment amount is shown as $2,126.25. Therefore, a total credit of $3,224.06 appeared in the Rosettis' mortgage

---

[18] Peter Rosetti Aff. ¶¶ 8-9.

[19] Id. ¶ 10.

[20] Id. ¶ 11.

[21] Id. ¶¶ 11-12, 14, 17.

[22] Id.; Loan History at posting dates 04/20/04 and 5/13/04.

[23] Peter Rosetti Aff. ¶ 17.

[24] Loan History at posting date 06/29/05.

account on June 29, 2004 and the court cannot determine from the summary judgment evidence where the excess $514.22 originated.

Two days later, on July 2, 2004, Chase transferred the $1,097.81 from "Unapplied Funds" to make the Rosettis' next monthly payment.[25] Despite the fact that the previous $2,126.25 only moved the Rosettis' "Paid to Date" from "Apr-04" to "May-04," somehow the $1,097.81 amount advanced the Rosettis' loan status from "May-04" to "Jun-04."[26] In other words, Chase gave the Rosettis one month's credit for $2,126.25 but then gave them another month's credit for nearly half that amount.

On July 26, 2004, a $1,604.00 credit appears on the Rosettis' account, but is credited to "Unapplied Funds" rather than principal, interest, or escrow. This appears to have been a misapplied payment, and it leaves the Rosettis' "Paid to Date" as "Jun-04" rather than advancing their account to July.[27]

The Loan History does not reflect any additional payments until September 2, 2004. On that date, Chase pulled $521.25 from "Unapplied Funds" to constitute a "Payment Received" of $2,126.25, meaning the Rosettis actually sent Chase a payment of $1,605.00 and that Chase still considered $2,126.25 to be the correct amount due (despite the alleged oral assurances of Chase's agent). This brought the Rosettis' "Paid to Date" to "Jul-04" – but this should have shown that they were paid though August. This error apparently was due to the above-mentioned misapplication of the July 26th payment.[28]

---

[25] Loan History at posting date 07/02/04.

[26] See id. at posting dates 06/29/04 through 07/02/04.

[27] Id. at posting date 07/26/04.

[28] Id. at posting date 09/02/04.

On September 16, 2004, Chase pulled $626.25 from "Unapplied Funds" to constitute a "Payment Received" of $2,126.25, meaning that the Rosettis actually sent a payment of $1,500.00 and, once again, that Chase considered $2,126.25 to be the correct amount due.[29] This advanced the Rosettis' account status to August although, as discussed above, they were apparently paid through September. A late fee was also charged on September 16th and, as far as the court presently is able to determine, this was the *only* late fee improperly assessed on the Rosettis' account.

Chase was apparently aware that the September 16th late fee was improper, because on September 24th Chase reversed it. September 24, 2004 shows eleven transaction entries on the Rosettis' account, all presumably designed to correct the June 29th – September 16th billing errors triggered by the insurance mix-up.[30] By this point the Rosettis appear to have had additional financial problems because they filed the First Bankruptcy Case on November 30, 2004.

## II. DISCUSSION

**A.    Summary Judgment Standard**

Chase bears the initial burden to show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.[31] A fact is material if its resolution in favor of one party might affect the outcome of the suit under governing law.[32] In deciding whether there is a disputed material fact issue precluding summary judgment, the court must take as true all evidence supporting Mr. Rosetti's claim, indulge every reasonable inference, and

---

[29] Id. at posting date 09/16/04.

[30] Id. at posting date 09/24/04.

[31] Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship, 520 F.3d 409, 411-12 (5th Cir. 2008) (citing FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)); see also Nixon v. Mr. Property Mgmt. Co., Inc., 690 S.W.2d 546, 548 (Tex.1985); TEX. R. CIV. P. 166a(c).

[32] Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

9

resolve any doubts in Mr. Rosetti's favor.[33] Summary judgment should not be granted if the evidence indicates that a reasonable fact-finder could find in Mr. Rosetti's favor.[34] Where Chase has met its initial burden, Mr. Rosetti "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [and] must come forward with 'specific facts showing that there is a genuine issue for trial.' Where the record taken as a whole could not lead a rational trier of fact to find for [Mr. Rosetti], there is no genuine issue for trial."[35]

B.  **Questions of Fact Exist in this Case Which Preclude Summary Judgment.**

In deciding the Motion, the court must first focus on Debtor's remaining claims after Rosetti I. As a result of the court's decision in Rosetti I, Debtor is left only with his breach of contract claim. As the court noted in Rosetti I,[36] if Chase misapplied the escrow—or otherwise failed to properly credit payments by the Rosettis, it will have breached the contract of the parties.[37] In turn, unless the summary judgment evidence reflects no disputable fact pertaining to that issue, the Motion must be denied.

There is no question that Mr. Rosetti has established that he and Chase disagree about whether he was given proper credit for all payments and escrow transactions.[38] Indeed the recitation above of the dealings of the parties leaves the court convinced that a fact-finder might

---

[33] See Norwegian Bulk Transp. A/S, 520 F.3d at 411-12; Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); Nixon, 690 S.W.2d at 548-49.

[34] Anderson, 477 U.S. at 248; see also Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

[35] Matsushita, 475 U.S. at 586-87 (quoting FED. R. CIV. P. 56(e)) (emphasis in original omitted).

[36] Rosetti, No. 07-04063-DML at 11 n.31, 2007 WL 2669265 at *5 n.31.

[37] See Watson v. Cargill, Inc., Nutrena Div., 573 S.W.2d 35, 39 (Tex. Civ. App.-Waco 1978, writ ref'd n.r.e.) (holding that if parties have agreed that a payment shall be applied to a certain indebtedness or if the debtor has directed such application, the agreement or direction is controlling). **[j-restatement, pls]**.

[38] See Letters from Peter N. Rosetti to Chase Manhattan Mortgage Corp. (July 21, 2004) (Sept. 22, 2004) (Nov. 1, 2004); Letters from Chase Manhattan Mortgage Corp. to Peter N. Rosetti (June 25, 2004) (Aug. 8, 2004) (Aug. 17, 2004) (Aug. 25, 2004) (Sept. 7, 2004) (Nov. 7, 2004) (Nov. 25, 2004).

reasonably conclude that Chase did not properly credit payments by the Rosettis or manage the escrow properly. But Chase argues that this adversary proceeding depends upon Mr. Rosetti's alleged oral communications with Chase. Chase insists that these oral statements may not be considered by the court because of the parol evidence rule.

The court does not agree. Neither the parol evidence rule nor any other limitation on the admissibility of evidence prohibits the use of testimony to show that a party has *performed* a contract or to show that that party's counter-party accepted the party's performance.[39] In the case at bar, Mr. Rosetti has stated in his affidavit that an agent of Chase advised him that the proper amount of his monthly payment was $1,562.00 as opposed to the $2,126.25 Chase appears to have accrued. Mr. Rosetti's testimony does not vary the contract of the parties (after all, the $2,126.25 payment amount was established by a statement sent to the Rosettis by Chase, not by the terms of the contract).

Even if the court accepted Chase's argument that Mr. Rosetti's oral evidence respecting his payments and the escrow effects modification of the parties' contract, that would not end the matter. While the parol evidence rule bars the use of oral evidence in construing an unambiguous contract, that does not mean parol evidence of post-contract conduct is always inadmissible. The Texas Business and Commerce Code, for example, specifically provides that signed contracts which exclude non-written modifications are valid in this state.[40] Nevertheless, comment four to § 2.209(b) states that such provisions do not limit the "actual later conduct" of parties that have entered into non-written modifications, despite a contract's provision that all modifications must be in writing.

---

[39] See Gray v. Blau, 223 S.W.2d 53, 57 (Tex. Civ. App.-Beaumont 1949, writ red'f n.r.e.); Tex. Jur. 3d *Contracts* § 385 (1997). **[j-restatement, pls]**

[40] Tex. Bus. & Com. Code Ann. § 2.209(b) (Vernon 2002)

The question of Chase's contractual breach, if any, turns on Chase's conduct during the spring, summer, and fall of 2004. Although Chase appears to have resolved the insurance mix-up within a reasonable time, questions of fact exist as to the nature of the apparent billing errors, the existence and timing of certain communications, and the reasonableness of the overall time involved in completely resolving the billing problems. Chase has therefore failed to show that it is entitled to judgment as a matter of law on Mr. Rosetti's breach of contract claim[41].

**C.  Damages**

The question of damages is, in the court's view, a simple one. The court has characterized this adversary proceeding as one to determine the amount owed by the Rosettis to Chase with respect to the Note. The "damages" suffered by the Rosettis (if any) are likely to be reflected in credits (if any) to which they are entitled and have not been given. Put another way, the court anticipates that the result of this adversary proceeding will be determination of the balance due from the Rosettis to Chase[42]. The Loan History and the other summary judgment evidence strongly suggests that the Rosettis have been less than ideal borrowers; they appear to have approached their loan from Chase with the insouciance and negligence of feckless teenagers rather than in the manner of responsible adults. If at trial this characterization is not controverted,[43] there is little chance Debtor will persuade the court that he is entitled to any damages—except, conceivably, attorneys' fees incurred by the need to establish that loan

---

[41] Chase has also urged disposition of this case adversary proceeding based on the theory of judicial estoppel. Assuming that that issue was not previously resolved (Rosetti I at 1, n.3), the court would not consider judicial estoppel appropriate to prevent reconciliation of the amount due Chase.

[42] It is even possible that a reconciliation will actually result in a loan balance higher than what Chase currently believes it is owed.

[43] The court recognizes that Debtor, at this stage, has been required to do no more than establish the existence of disputed material facts to defeat the Motion. It may be that Debtor's case at trial will satisfy the court that he comes before it with suitably clean hands and that Chase has caused him damages requiring a remedy beyond quantification of the debt to Chase.

balance—beyond the correction of the Rosettis' loan balance to give proper credit for all payments made.

### III. CONCLUSION

The court concludes it has not been shown that there is no genuine issue as to any material fact and that Chase is entitled to judgment as a matter of law. Summary judgment should not be granted because the evidence indicates that a reasonable fact-finder could find in Mr. Rosetti's favor. The Motion is therefore DENIED.

On the other hand, the court believes resolution of this adversary proceeding might be achieved efficiently other than by trial. The parties are accordingly directed to contract the court to arrange a time for a status conference to consider methods of alternative dispute resolution.

So ORDERED.

### ### END OF OPINION ###